COSTAL PLASTICS, INC., and all similarly situated shareholders, Plaintiff,

v.

MORGAN, OLMSTEAD, KENNEDY & GARDNER, INC., et al., Defendants.

Civ. A. No. 75–1582.

United States District Court,
W. D. Pennsylvania.

Nov. 19, 1976.

W. E. Frazier, Jr., Pittsburgh, Pa., for plaintiff.

Frederick J. Francis, Pittsburgh, Pa., for all other defendants.

David L. McClenahan, Pittsburgh, Pa., for National Quotation.

John P. McComb, Jr., Pittsburgh, Pa., for D. Ray Hall.

## OPINION

MARSH, District Judge.

This matter is before the court on defendants' "Motion for Order of Sanctions Dismissing Action." Through their motion, the defendants assert that attorney Willis E. Frazier, Jr., an incorporator and an apparent officer and majority shareholder of the plaintiff Costal Plastics, Inc., has wilfully failed to comply with this court's order of June 14, 1976, which directed Mr. Frazier to answer the defendants' oral interrogatories fully, completely and to the best of his knowledge. The defendants' motion will be granted and the plaintiff's action will be dismissed.

Plaintiff has alleged the existence of a stock fraud scheme in which the defendants allegedly manipulated and promoted an increase in the price of shares of stock of Stellar Industries and then sold this stock to unwary investors. Part of the fraudulent scheme allegedly involved a fraudulent merger of Stellar Industries (Stellar) and Locke Manufacturing Company (Locke) in January, 1970. The plaintiff corporation, which allegedly owned Locke stock and allegedly obtained Stellar stock through that

merger, brought this action pursuant to Section 27 of the Securities Exchange Act of 1934 (15 U.S.C. § 78aa). The plaintiff seeks to represent similarly situated shareholders and demands damages of $3,000,000.

The defendants have moved to dismiss the complaint alleging, *inter alia*, that this action raises claims identical to those asserted in actions previously filed in this court by Mrs. Marie Frazier, an incorporator, and a present or former officer and shareholder of the plaintiff Costal Plastics, Inc. Marie Frazier is the wife of Willis E. Frazier, Jr., who appeared as counsel of record on behalf of Mrs. Frazier in the earlier actions filed in this court.[1]

On April 22, 1976, when the attorney for the plaintiff Costal Plastics withdrew from the instant action, Mr. Frazier entered his appearance in this case as attorney of record for the plaintiff. Prior to that time, the defendants had attempted to depose Mr. Frazier in connection with the arguments raised in the motions to dismiss. In a subpoena duces tecum, Mr. Frazier had been directed to produce all relevant documents pertaining to the subject of the litigation. Mr. Frazier's deposition was originally noticed for February 19, 1976, but was delayed at Mr. Frazier's request. The deposition began on February 25, 1976 and was continued on March 10, 1976, but was adjourned without having been completed after Mr. Frazier refused to answer numerous questions. In a subsequent motion to compel answers and production, the defendants asked that Mr. Frazier be ordered to produce a list of Locke shareholders which he claimed to possess and that he be directed to answer 27 questions which he had refused to answer or had answered in an evasive manner.

Generally, the defendants' questions concerned Mr. Frazier's role in initiating lawsuits in connection with the 1970 merger and the relationship, in terms of real party in interest, among Mr. Frazier, Costal Plastics, and Mrs. Frazier. At the deposition, Mr. Frazier refused to answer certain questions by asserting the attorney-client privilege and an attorney work product privilege. He refused to answer other questions on the ground that they went beyond the scope of discovery in this action. In response to numerous other questions, Mr. Frazier stated that he was unable to recall answers.

At the hearing on the defendants' motion to compel on April 22nd, when Mr. Frazier first appeared in this action as counsel for the plaintiff, he told the court that he believed that the husband-wife privilege permitted him to refuse to answer questions about his wife's activities.[2] He characterized this suit as an attempt to revive what had been left to "die on the vine" in Cali-

1. The prior actions brought by Marie Frazier involved many of the same defendants who are before the court in the instant action. See Civil Action Nos. 71–657, 71–1123, and 72–495. In Civil Action No. 72–495, Mrs. Frazier sued each of the defendants named in the instant action, with the exception of D. Ray Hall. That action was dismissed as to several defendants by Judge Dumbauld and the suit against the remaining defendants was transferred to the United States District Court of the Central District of California. In California, the complaint was dismissed on November 15, 1973, and Marie Frazier was given 20 days to file a new complaint against Stellar Industries (which is not a defendant in the instant case) and Jack I. Salzberg (who was named as a defendant in the instant case, but who was never served).

The defendants contend that D. Ray Hall was previously named as a defendant with Morgan, Olmstead, Kennedy & Gardner, Monte Krissman, Jefferies & Co., and others in actions involving the same subject matter brought by a Mr. Miller in the United States District Court for the Eastern District of Michigan (Number 670375) and by a Mr. Stoneham in the United States District Court for the Southern District of New York (Civil No. 76–385).

Mr. Frazier, a member of the Pennsylvania bar who admittedly makes a hobby of attempting to uncover fraud in the investment business, has acknowledged that he acted as co-counsel for the plaintiff Stoneham in the New York action and that he signed the complaint filed in Michigan on behalf of Miller.

2. It appears that the earlier actions brought in the name of Marie Frazier were based upon shares of Locke stock which were purchased in Mrs. Frazier's name in mid-November, 1969. Mr. Frazier contends that the instant action is based upon Locke stock which he purchased on behalf of Costal Plastics on November 11 or 12, 1969.

fornia[3] and explained that he had hesitated to reveal any information at the deposition because he recognized that in the future he would become the attorney for Costal Plastics.

In an order issued June 14, 1976, the court ruled that the questions were within the scope of discovery and did not violate any privilege asserted by the deponent. Mr. Frazier was ordered to answer the questions and to produce any list of Locke shareholders which he possessed. In addition, the court found that his lack of cooperation was often deliberate and ordered him to pay $100 to each of the three defense counsel as the reasonable expenses and fees incurred in obtaining the order. Rule 37(a)(4), Fed.R.Civ.P.

Mr. Frazier's deposition resumed on July 21, 1976. At that time, he failed to produce the list of shareholders and explained to defense counsel that the list was simply a few names on some scratch paper which he had been unable to locate that morning (Deposition p. 273). The transcript of that session indicated that Mr. Frazier's pattern of evasiveness continued as before. When asked who had prepared the list of shareholders, Mr. Frazier refused to answer and asserted a privilege to keep his sources confidential. He said that the man who prepared the list still worked for Stellar and that the man's job might be endangered if his name were revealed. Mr. Frazier added that he could not remember the man's name anyway.

When asked in which division of Stellar the man worked, Mr. Frazier stated that he would refuse to answer until he had consulted with the individual in question. When asked how he would consult with this individual whose name he could not recall, Mr. Frazier explained that he had the man's name on a proxy statement which he kept in his personal records. He indicated that the proxy statement was the whole basis of

this lawsuit, but explained that he had not produced it pursuant to the subpoena duces tecum because he did not think defense counsel wanted it. He stated that the defendants were not entitled to see his copy of the proxy statement because it was part of his "worksheet" and because "You guys probably have more copies than I have."

When once again asked the questions which he had previously refused to answer on the basis of privilege, Mr. Frazier stated that he could not recall whether he had advised his wife to buy Locke stock or whether she had purchased the stock without discussing the matter with him (Deposition p. 336).[4] Mr. Frazier said he did not know whether he had acquired the stock for the purpose of gaining status to bring a lawsuit. (Deposition pp. 326–327).

The deposition session was adjourned without being completed and the defendants subsequently, on September 20, 1976, filed the present motion for sanctions. On October 6, 1976, an order was mailed to all counsel setting a hearing on the defendants' motion for October 18th. On October 11, 1976, Mr. Frazier paid each of the defense counsel the $100 in expenses assessed by the court in its order of June 14th and he also turned over to counsel for the defendants a list of Locke shareholders consisting of 67 names on nine pages. On October 18th, Mr. Frazier and the three counsel for defendants appeared for the hearing on the motion for sanctions, but Mr. Frazier asserted that he had never received written notice of the hearing and claimed that he had not been able to prepare properly. The court issued an oral order continuing the hearing until October 28, 1976.[5]

Mr. Frazier appeared on October 28th and, this court's previous ruling with respect to privilege and relevancy notwithstanding, again argued that his refusal to cooperate was justified by the attorney-

3. See note 1, *supra.*

4. See note 2, *supra.*

5. Mr. Frazier did not receive written notice of the hearing fixed for October 18th because he

had moved without leaving a forwarding address.

The order sent by certified mail to his last known address was eventually returned to the court marked "unclaimed."

client privilege. He said the defendants were making unwarranted excursions into the files which he kept as an attorney and argued that the expenses assessed by the previous order of court constituted a financial hardship. Mr. Frazier did not, however, set forth any arguments or evidence to show that his failure to comply with the substance of the court order had been due to inability rather than willfulness or bad faith.

■ Rule 37(b)(2) of the Federal Rules of Civil Procedure authorizes various sanctions against a party who fails to comply with a discovery order. Where the noncompliance is the result of willfulness or bad faith, the court may impose the sanction of dismissal. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (Decided June 30, 1976); *Societe Internationale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); *DiGregorio v. First Rediscount Corporation,* 506 F.2d 781, 788 (3rd Cir. 1974).

■ Mr. Frazier has failed to comply with the discovery order of June 14, 1976, in that he failed to answer a number of questions on July 21st when his deposition was resumed. His eleventh hour production of the shareholder list does little to assure the court of his good faith, particularly in light of the obvious discrepancy between the nine-page document which was ultimately produced and Mr. Frazier's earlier descriptions of the document as being simply a few names on two pages of scratch paper. (Deposition pp. 70, 84, 273, 313).

Reviewing the transcript of the July 21st deposition, the court finds that Mr. Frazier was unable to recall answers to some of the very same questions which he had previously refused to answer on the basis of privilege; that Mr. Frazier repeatedly asserted the attorney-client privilege subsequent to the court order which held that that privilege was inapplicable to the questions at issue relating to Mr. Frazier's own activities in instigating this and other civil proceedings against these defendants; that Mr. Frazier admitted that he had objected to questions at an earlier deposition simply as a "dilatory maneuver." (Deposition p. 308).

These findings, when combined with Mr. Frazier's earlier statement that he would not strain his memory to recall answers (Deposition p. 100), gives this court no alternative but to find that Mr. Frazier's lack of cooperation in the discovery process has been deliberate and in bad faith.

Rule 37(b) authorizes several alternatives to the harsh sanction of dismissal. A review of the entire record before the court indicates, however, that none of those alternatives is appropriate here. The plaintiff has made an apparent game of the defendants' attempt to get information relevant to the issues of res judicata and collateral estoppel raised in the motions to dismiss. An order establishing designated facts (Rule 37(b)(2)(A)) or an order refusing to allow the plaintiff to oppose the defenses of res judicata or collateral estoppel (Rule 37(b)(2)(B)) would also result in dismissal. The record before the court does not indicate that Mr. Frazier regards this proceeding as a serious attempt to adjudicate a legitimate dispute. He stated that the defendants in this action were chosen at random and that he had hoped that the simultaneous filing of numerous suits would lead to eventual consolidation for multi-district litigation. (Deposition pp. 331–332). He has acknowledged that the instant action is based upon the same facts as the 1972 action against the National Quotation Bureau which was dismissed by Judge Dumbauld. (Deposition pp. 365–366).[6]

---

**6.** Specifically, Rule 37(b)(2) authorizes sanctions, including dismissal, when a party or an officer, director or managing agent of a party fails to comply with a discovery order. The nature of Mr. Frazier's relationship to the named plaintiff, Costal Plastics, Inc., was one of the subjects addressed during the deposition, and Mr. Frazier's responses were particularly evasive. Mr. Frazier stated that he has spent 1200 hours uncovering this alleged fraud, and a review of the record leaves little doubt that this is *his* lawsuit.

Costal Plastics was organized by Mr. Frazier in 1964 to develop and market plastic clothing. Mr. Frazier was an officer and a director and held more than 98% of the outstanding stock.

In its decision in *National Hockey League, supra,* the Supreme Court noted that dismissal must be available to the district court as a sanction

". . . not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent."

This is a particularly significant factor here where the bad faith and deliberate noncompliance has been by a member of the bar who has shown a complete disregard for his responsibilities as an attorney as well as for the discovery process. Permitting such conduct by Mr. Frazier can only serve to make other parties in other lawsuits feel free to disregard other discovery orders.

Finally, Rule 37(b) states that the court shall require the party failing to obey the order to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or other circumstances make an award of expenses unjust. Mr. Frazier's willful refusal to cooperate cannot be justified. Mr. Frazier argued to the court that his own limited financial resources make an award of expenses unjust. He made that same argument to the court last April, but subsequently refused to cooperate at the July deposition. That lack of cooperation wasted the time of three attorneys that day and made it necessary for those attorneys to return to the court on October 18th and October 28th for the hearing on the motion for sanctions.

Thus, Mr. Frazier will be required to pay to the moving defendants the reasonable expenses, including attorneys' fees, caused by his failure to comply with the court order of June 14, 1976.

An appropriate order will be entered.

His wife was also a shareholder and officer. This arrangement continued with some minor changes until just prior to the filing of this lawsuit. In an informal transaction in October, 1975, Mr. Frazier apparently gave away all of his stock in Costal Plastics, and yet retained an indefinite equitable interest in the shares. Mr. Frazier's testimony contradicts itself as to whether or not he actually owns the shares at this time. (Deposition pp. 112–113). At the time of that transfer, but apparently without an official shareholder meeting, Mr. Frazier and his wife removed themselves as officers of the corporation. Mr. Frazier said that the corporation maintains no certificate book listing its shareholders.

The corporation itself appears to have been inactive since mid-1970 when its office furniture was sold at a sheriff's sale. The corporation has filed no federal income tax returns for five years. Mr. Frazier produced some written records for the corporation from 1964 to 1970. He said the corporation's secretary was in the process of updating the corporate minutes, but he was unable to recall the address or telephone number of the secretary. He said he contacts the corporate secretary by leaving a telephone message at the United Parcel Service office in Beaver Falls, Pennsylvania.

Mr. Frazier said that since Costal was his corporation, he did things very loosely (Deposition p. 142) and he loaned money to the corporation and borrowed money from it rather freely (Deposition p. 143). He said he might have loaned Costal Plastics money in 1969 so that the corporation could purchase the Locke stock.